IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JUSTIN MCLAIN WIGGINS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV 118-116 |
| NATHAN DEAL, et al., | ) ) | |
| Defendants. | ) ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, formerly incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii).

### I.  SCREENING OF THE COMPLAINT

#### A.  BACKGROUND

Plaintiff names as Defendants: (1) Nathan Deal, Governor of Georgia; (2) Gregory Dozier, Commissioner of Georgia Department of Corrections ("GDC"); (3) Stan Shepard, Field Operational Manager; (4) Scott Wilkes, Warden; (5) Edward Philbin, Warden; (6) Dr. Sharon Lewis, Medical Director of GDC; (7) Dr. Mary Alston, Medical Director of ASMP; (8)

Chardonnay Dialysis, Inc.; (9) Joy Johnson, Dietician; (10) Ruthie Shelton, Deputy Warden of Care and Treatment; (11) Liz Roberts, Deputy Warden of Administration; (12) Tommy Tremble, Deputy Warden of Security; (13) Nicloe FNU, Chardonnay Peritoneal Dialysis Coordinator; (14) Dr. Laura Mulloy, Head Specialist over Dialysis; and (15) John Doe. (Doc. no. 1, pp. 7-9.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff previously served a sentence at ASMP, where he was incarcerated since January 2016. (Id. at 33.) Plaintiff suffers from end-stage renal disease and requires four dialysis treatments per day. (Id. at 9.) Plaintiff requires a peritoneal dialysis diet. (Id.) Plaintiff's mother spoke with Warden Shepard sometime in 2016 about Plaintiff's medical needs. (Id. at 33.) Warden Shepard told her to have the prison doctor write a prescription for whatever is needed. (Id.)

Kidney specialists at ASMP wrote orders for "unprocessed meat diet, high quality protein diet with as many fresh fruits and vegetables as possible and double portions." (Id. at 33.) Those orders have never been followed. (Id.) The diet was ordered because of weight loss, low albumin levels, negative effects of processed foods, and because it is necessary for peritoneal dialysis patients. (Id.) Proper diet influences the effectiveness of peritoneal dialysis. (Id. at 34.) GDC does not recognize a non-processed meat diet. (Id.) A renal diet is a low-protein diet, which is not tailored to the needs of a peritoneal dialysis patient. (Id. at 35.) Plaintiff has had to eat unhealthy foods from the prison store to obtain protein and energy. (Id. at 36.) When Plaintiff was not able to get food from the store, he barely had enough energy to get out of bed, was not capable of performing daily functions, and experienced loss of muscle mass. (Id.) Plaintiff kept a record of every meal and snack he received since May 2017. (Id. at 34.) Plaintiff

2

was served a diet too high in cholesterol, saturated fat, and sodium and too low in fiber and "several micronutrients." (Id. at 5.) Soy in his diet is threatening his thyroid and immune system and has caused painful gastrointestinal cramping. (Id.) Plaintiff is served meals with "50% soy and 50% poultry or beef three times a day." (Id.) Plaintiff also suffers from back and joint pain, atrophy, blood pressure spikes and drops, persistent hot flashes, diarrhea, dizziness, blackouts, profuse sweating, and weight loss. (Id. at 10.)

Plaintiff has not received at least 120 grams of protein per day, resulting in accelerated deterioration of his health. (Id. at 34.) Plaintiff has been tortured by lack of strength because he has not received the necessary nutrition. (Id. at 35.) Warden Wilkes told Plaintiff the "prescribed dialysis diet is a security issue not medical." (Id. at 10.) Plaintiff has been denied more than one hundred medically sufficient meals. (Id.) Some meals were "unfit to eat due to being nasty and unsanitary." (Id.) Warden Wilkes told Plaintiff, "We don't care if you never eat go to the inmate store." (Id.) Plaintiff's family and his lawyer, Victoria Smith, spoke with Warden Wilkes, Commissioner Dozier, Ms. Johnson, and "all other Defendants" about Plaintiff needing the diet prescribed to him, but the diet was never authorized. (Id.) Ms. Johnson informed Plaintiff it was within prison officials' discretion to authorize his diet. (Id. at 11.)

ASMP is not designed for "peritoneal dialysis disabled inmates," as the common building and space is not safe for dialysis. (Id.) There are "multiple filthy free flowing air vents, open window to outside near high concentrations of mold, no back up power plug in case of power outage and no emergency button in room during dialysis." (Id. at 11.) Plaintiff is exposed to high levels of black mold. (Id.) ASMP and GDC officials ignore doctors' orders and feed Plaintiff processed food, which include added sugar and high fructose corn syrup, which can cause obesity, heart disease, and cancer. (Id.) Defendants ignore doctors' instructions regarding

3

prescribed diets, medications, clean environments, air flow, ventilation, clean cloths and bed lining, and "other necessary accomm[o]dations for peritoneal dialysis." (Id. at 13.)

Without a sterile, clean environment, peritoneal dialysis poses a risk of infection, which could make future treatment more difficult. (Id. at 39.) Peritoneal dialysis require a clean environment, including clean bed linens, to prevent the risk of "bodily harm or death," and Plaintiff has not been supplied with clean linens. (Id. at 36.) Other inmates in Plaintiff's unit are unhygienic, and the environment "creates massive amounts of bacteria and germs" creating an extremely high risk of infection and death. (Id. at 37.) Prison officials fail to maintain a hospital environment and use sanitization techniques, which creates the risk of cross-contamination. (Id.) The presence of black mold is toxic and creates the risk of infection at his catheter site. (Id. at 38.) The dorms also contain roaches, mice, and spiders. (Id.) News outlets and ex-employees have exposed the unsanitary conditions at ASMP. (Id.)

Peritoneal dialysis patients are not supposed to perform heavy lifting, as they are susceptible to hernias, and Plaintiff has hernia symptoms, constipation, and diarrhea. (Id. at 39, 44.) The dialysis director is not experienced with peritoneal dialysis, which causes a risk of damage to Plaintiff's health. (Id. at 41.) ASMP did not have nurses qualified to perform peritoneal dialysis until October 24, 2017, but a knowledgeable nurse only treats him approximately once per month. (Id. at 40.) Inexperienced staff poses a risk of harm to Plaintiff. (Id.) Plaintiff's dialysis port is out of place, which can cause hernias and death. (Id.) Plaintiff has gone months without having lab work done and has gone weeks without very important medications. (Id. at 40-41.) Plaintiff has suffered from extremely high blood pressure, which prison officials disregarded, causing Plaintiff severe and extensive damage to his remaining kidney function. (Id. at 41.) Plaintiff has anxiety attacks caused by his improper medical care.

4

(Id. at 42.)  Plaintiff experiences greater amounts of fluid buildup and "barely urinates anymore without the help of medications." (Id. at 43.)

Plaintiff requires more dialysis, shots for low hemoglobin, pills to help urination, laxatives, and parathyroid medication than he needed before he was at ASMP. (Id. at 43.) ASMP and GDC have failed to properly respond to his grievances. (Id. at 44.) Prison officials have performed "harassment searches" of Plaintiff's cell, and, on January 5, 2018, Warden Tremble and CERT Officers Campbell and Riley searched his room without proper sanitation techniques, disrupted his dialysis by stepping on the hoses, and dumped out two sealed coffee containers. (Id.)

As relief, Plaintiff seeks: (1) declaratory relief regarding his Eighth Amendment, Americans with Disabilities ("ADA"), and Rehabilitation Act ("RA") claims; (2) an order for GDC to "provide all reasonable accommodations needed for proper care of peritoneal dialysis patients"; (3) compensatory damages; (4) punitive damages; and (5) prospective relief under the ADA and RA. (Id. at 6, 14-29.)

### B. DISCUSSION

#### 1. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir.

1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

> **2. Plaintiff Fails to State a Valid Claim against Defendants Deal, Philbin, Lewis, Alston, Chardonnay Dialysis, Inc., Shelton, Nicole LNU, Mulloy and John Doe**

The Eleventh Circuit has held that a district court properly dismisses a defendant

6

where a plaintiff fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). Plaintiff's only mention of these Defendants is in his defendant list. (Doc. no. 1, pp. 1, 3.) Because Plaintiff alleges no facts regarding Defendants Deal, Philbin, Lewis, Alston, Chardonnay Dialysis, Inc., Shelton, Nicole LNU, Mulloy, or John Doe anywhere in his 69-page complaint, he fails to state a claim against these Defendants.

### 3. Plaintiff Fails to State a Valid Claim under the ADA or RA

Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act of 1973, as amended, provides in pertinent part, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

However, "[t]he Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment" and "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005); see also Hammonds v. DeKalb Cty., No. 4:16-BE-1558-M, 2017 WL 363974, at *5-7 (N.D. Ala. Jan. 25, 2017) (dismissing prisoner's ADA and RA claims where "[b]ased on the allegations, he was not treated worse than the

7

other prisoners needing medical care *because he is disabled*, and he is not complaining of being excluded from some prison program service, or activity *that the non-disabled prisoners could obtain*. Rather, he is complaining, in essence about incompetent treatment of his diabetes, a complaint for which the ADA does not create a remedy.") (emphasis in original).

Because Plaintiff's allegations exclusively concern treatment of his end-stage renal disease, he is not entitled to relief under the ADA or RA. Plaintiff does not allege he receives worse medical care than non-disabled prisoners or is excluded from prison program services on account of his alleged disability. In fact, Plaintiff does not compare his medical treatment to that of any other inmate. Therefore, Plaintiff fails to state a valid claim under the ADA or RA.

### 4. Plaintiff Fails to State a Valid Claim against Commissioner Dozier

Plaintiff's complaint fails to state a claim against Commissioner Dozier because he is attempting to hold Commissioner Dozier liable merely in light of his supervisory position. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Commissioner Dozier liable, Plaintiff must demonstrate that either (1) Commissioner Dozier actually participated in the alleged constitutional violation, or (2) there is a causal connection between his actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff only alleges he, his family, and his lawyer, Victoria Smith, spoke to Commissioner Dozier about Plaintiff receiving a prescribed diet. Thus, it appears Plaintiff names Commissioner Dozier as a defendant not because of his direct involvement in Plaintiff's medical treatment, but merely because of his supervisory position. (See generally doc. no. 1.)

Likewise, Plaintiff must allege a causal connection between Commissioner Dozier and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated

occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff does not allege any facts showing a history of widespread abuse, nor does he claim any policy or custom administered by Commissioner Dozier resulted in his alleged injuries. Finally, Plaintiff does not allege any facts to show Commissioner Dozier either directed subordinates to act unlawfully or knew they would do so and failed to act in an appropriate manner.

In sum, Plaintiff has not shown Commissioner Dozier actually participated in the alleged constitutional violations, not has he drawn the necessary causal connection to any alleged constitutional violation. Therefore Plaintiff fails to state a claim upon which relief can be granted against Commissioner Dozier, and he should be dismissed from the case.

### 5. Plaintiff Fails to State a Claim for Deliberate Indifference to a Serious Medical Need Against Defendants Wilkes, Johnson, Shepard, and Roberts

Plaintiff fails to state a claim against Defendants Wilkes, Johnson, Shepard, and Roberts for deliberate indifference to a serious medical need regarding his diet. To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To satisfy the subjective component, Plaintiff must allege that a defendant (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted more than mere negligence. Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505. Moreover, the Eleventh Circuit has

11

consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010). Furthermore, the Court should not second-guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

Plaintiff alleges the following facts concerning his allegedly improper diet and resulting symptoms. Plaintiff requires a peritoneal dialysis diet because of his end-stage renal disease, for which Plaintiff requires four dialysis treatments per day. (Doc. no. 1, p. 9.) Kidney specialists at ASMP wrote orders for "unprocessed meat diet, high quality protein diet, with as many fresh fruits and vegetables as possible and double portions," but those orders have never been followed. (Id. at 33.) Plaintiff has not received the 120 grams of protein per day, resulting in accelerated deterioration of his health. (Id. at 34.) Proper diet affects the effectiveness of peritoneal dialysis. (Id.) GDC does not recognize a non-processed meat diet, and a renal diet is a low-protein diet, which is not suited to the needs of a peritoneal dialysis patient. (Id. at 34-35.) Plaintiff was served a diet high in cholesterol, saturated fat, and sodium, and low in fiber and micronutrients. (Id. at 5.) Soy in Plaintiff's diet threatens his thyroid and immune system and caused painful gastrointestinal cramping. (Id.) As a result, Plaintiff had to eat unhealthy food from the prison store or otherwise suffer from lack of energy and loss of muscle mass. (Id. at 36.) Plaintiff suffers from back and joint

pain, atrophy, blood pressure spikes and drops, persistent hot flashes, diarrhea, dizziness, blackouts, profuse sweating, and weight loss. (Id. at 10.)

Even assuming Plaintiff's diet was a serious medical need and Defendants Wilkes, Johnson, Shepard, and Roberts were responsible for Plaintiff receiving an appropriate diet, Plaintiff alleges, at most, a mere difference of opinion as to the proper course of treatment. Although Plaintiff claims the diet he received was inadequate based on his medical needs, the exhibits to his complaint indicate Plaintiff's medical needs were considered and, to the extent he would allow, accommodated by prison officials responsible for his diet.[1]

Specifically, in Exhibits 5 and 6, Ms. Johnson explains Plaintiff's diet satisfied his nutritional requirements. (Doc. no. 1, pp. 60-64.) Ms. Johnson stated in her report Plaintiff received 125 grams of protein and over 3,300 calories per day from his prison diet, which was more than the requirements of the diet recommended by the National Kidney Foundation. (Id. at 61.) Furthermore, Ms. Johnson stated she felt Plaintiff needed a renal diet, but she was unable to do more to improve his nutritional status because Plaintiff demanded the regular diet and continued to eat "inappropriate store foods." (Id.) In fact, Ms. Johnson indicated Plaintiff's consumption of foods from the inmate store were "contradictory to his needed diet restrictions" and "detrimental to his health." (Id. at 61, 64.) Finally, Ms. Johnson's report indicates she received the physicians' orders related to

---

[1]The Court properly considers the exhibits to Plaintiff's complaint for the purpose of screening. See Fed. R Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Arthur v. Thomas, 674 F.3d 1257, 1265 (11th Cir. 2012) (considering declarations and exhibits attached to complaint part of plaintiff's pleading for purpose of motion to dismiss); Barfield v. Lewis, 5:17-CV-00240-MTT-CHW, 2018 WL 1866616, at *2 (M.D. Ga. Jan 18, 2018) (considering exhibits in initial screen of incarcerated plaintiff's complaint).

Plaintiff's diet and made every reasonable effort to fashion a diet consistent with Plaintiff's medical condition and preferences. (Id. at 60-61.)

Thus, Plaintiff's allegations evidence nothing more than a mere difference of opinion between an inmate and prison medical officials over the course of treatment. See Smith, 375 F. App'x at 910. Accordingly, Plaintiff fails to state a claim of deliberate indifference to his serious medical needs against Defendants Wilkes, Johnson, Shepard, and Roberts.

### 6. Plaintiff Fails to State a Claim for Relief Regarding the Grievance Procedure at the Prison

Plaintiff alleges ASMP and GDC officials have failed to properly respond to his grievances. (Doc. no. 1, p. 44.) Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (*per curiam*). Thus, any claim Plaintiff may be attempting to raise based on his inability to utilize a grievance procedure fails to state a claim upon which relief may be granted. See id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.").

### 7. Plaintiff Fails to State a Claim Based on Searches of His Cell and Deprivation of His Personal Property

Plaintiff alleges Deputy Warden Tremble and other ASMP officers performed harassment searches of his prison cell, interrupted his treatment by stepping on hoses, and dumped out two sealed containers of coffee during the searches. (Doc. no. 1, pp. 44.) First, Plaintiff does not state a Fourth Amendment claim based on the cell searches, because "[p]risoners have no Fourth Amendment rights against searches of their prison cells . . . ."

Padgett v. Donald, 401 F.3d 1273, 1278 (citing Hudson v. Palmer, 468 U.S. 517, 526 (1984)); Simmons v. Williams, CV 614-111, 2017 WL 3427988, at *16 (S.D. Ga. Aug. 9, 2017). Second, Plaintiff fails to state a claim based on deliberate indifference to a serious medical need based on the officers stepping on the hoses connected to his dialysis machine during searches of his cell as he fails to allege either (1) the officers were more than merely negligent in stepping on the hoses or (2) Plaintiff suffered an injury as a result of their actions. Melton, 841 F.3d at 1223; Goebert, 510 F.3d at 1326.

Finally, fails to state a valid § 1983 due process claim based on the deprivation of his property. The Fourteenth Amendment does not protect against all deprivations of property, only against deprivations that occur "without due process of law." Parratt v. Taylor, 451 U.S. 527, 537 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-31 (1986). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Georgia has created a civil cause of action for the wrongful deprivation of personal property. O.C.G.A. § 51-10-1. This statutory provision covers the unauthorized deprivation of an inmate's property by prison officials. Grant v. Newsome, 411 S.E.2d 796, 799 (Ga. App. 1991). The statutory cause of action constitutes an adequate post-deprivation remedy under Parratt. See Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987). Accordingly, Plaintiff fails to state a claim against Deputy Warden Tremble based on these allegations and he should be dismissed from the case.

### 8. Plaintiff Fails to State a Claim Regarding His Remaining Allegations

In addition to the allegations discussed above, Plaintiff also complains of (1) mold; (2) dirty air vents; (3) failure to provide backup electrical sources for his dialysis machine; (4) failure to have an emergency button in his room; (5) dirty linens and cloths; (6) slow lab work; (7) failure to refill medication in a timely manner; and (8) disregard of his high blood pressure. (See doc. no. 1.) However, Plaintiff does not explain how any named Defendants are responsible for these alleged conditions or failures. As stated above, "the complaint must state with some minimal particularity how the over acts of the defendant cause a legal wrong." Douglas, 535 F.3d at 1321-22. Plaintiff has failed to meet this minimal requirement as to these allegations. Therefore, Plaintiff fails to state a claim based on these allegations.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 1st day of October, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA